RACHEL E. KAUFMAN (CSB# 259353)
*rachel@kaufmanpa.com*
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorney for Plaintiff and the Proposed Classes*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SANDRA ARCIERI,** individually and on behalf of all others similarly situated,

*Plaintiff,*

*v.*

**SUNRUN, INC.,** a Delaware corporation, and **CLEAN ENERGY EXPERTS LLC**, a California company,

*Defendants,*

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Sandra Arcieri ("Plaintiff Arcieri" or "Arcieri") brings this Class Action Complaint and Demand for Jury Trial against Defendant Sunrun, Inc. ("Defendant Sunrun" or "Sunrun") and Defendant Clean Energy Experts LLC d/b/a Solar America ("Defendant Solar America" or "Solar America") to stop the Defendants from violating the Telephone Consumer Protection Act by making pre-recorded telemarketing calls without prior express written consent, including to consumers who registered their phone numbers on the National Do Not Call registry ("DNC). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Arcieri, for this Complaint, alleges as follows upon personal

knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Sandra Arcieri is a resident of Weymouth, Massachusetts.

2. Defendant Sunrun, Inc. is a Delaware registered corporation headquartered in San Francisco, California. Defendant Sunrun conducts business throughout this District, California, and the U.S.

3. Defendant Clean Energy Experts LLC is a California registered company headquartered in San Francisco, California. Clean Energy Experts LLC operates using the alias Solar America, through which it conducts business throughout this District, California, and the U.S.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendants because the Defendants conduct business in this District and the wrongful conduct giving rise to this case was directed from this District, and the venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Sunrun and Defendant Solar America both reside in this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to an online robocall tracking service, 4.4 billion robocalls were placed in April 2021 alone, at a rate of 147.6 million per day. www.robocallindex.com (last visited May 19, 2021).

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

**COMMON ALLEGATIONS**

17. Defendant Sunrun sells solar power systems to consumers throughout the U.S.[1]

18. Clean Energy Experts LLC operates using the d/b/a Solar America.[2]

19. Solar America provides home solar system quotes to consumers.[3]

20. In 2015, Clean Energy Experts LLC was acquired by Sunrun.[4]

21. The SolarAmerica.com website shows that the site is supported by Sunrun:



[5]

22. Sunrun is also the #1 solar company promoted on SolarAmerica.com:




23. Solar America places outbound telemarketing calls to consumers nationwide on behalf of Sunrun, to generate solar installation appointments for Sunrun.

---

[1] https://www.sunrun.com
[2] https://uspto.report/TM/85761433
[3] https://www.solaramerica.com/about-us/
[4] https://investors.sunrun.com/filings-financials/sec-filings/xbrl_doc_only/738
[5] https://www.solaramerica.com/

24. The express purpose of these calls is to solicit call recipients to purchase Sunrun products.

25. Solar America places calls using artificial and/or prerecorded voices.

26. Solar America also places multiple calls to consumer phone numbers that are registered on the DNC regardless of whether it has consent to place such calls or not.

27. The Federal Communication Commission has instructed that corporations such as Sunrun may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

28. In the present case, Defendant Sunrun is using its own company (Solar America) to place telemarketing calls on its behalf as a separate corporate identity, thereby attempting to distance itself from unlawful telemarketing practices.

29. Sunrun job postings show that placing cold calls is required by its employees. For example:

sunrun

**Sunrun**

Solar Sales Consultant

Phoenix, AZ Full Time Paid

Job Description

We are looking to hire a friendly, motivated, enthusiastic and well-spoken Solar Sales Consultant to generate leads and drive sales. The Solar Sales Co include generating potential leads, soliciting potential customers, facilitating sales, and connecting customers with the right salesperson. You should present persuasive sales proposals to customers to encourage sales and repeat business.

To be successful as a Solar Sales Consultant, you should be persuasive and have excellent negotiation skills. Ultimately, an exceptional Solar Sal demonstrate effective communication and customer service skills to continually meet or exceed sales targets.

SALES CONSULTANT RESPONSIBILITIES:

- Initiating contact with potential customers through cold-calling, door knocking, or responding to inquiries generated from advertisements.[6]

# Cee Partner Account Manager

Sunrun | Georgia

Expired

5 months ago

Paid Job

**Description**

CEE Partner Account Manager Sunrun Nationwide, GA Full-Time Create Job Alert. Get similar jobs sent to your email Sunrun is the nations leading home solar, battery storage, and energy services company. Our mission is to confront our planets biggest challenge, climate change, by creating a planet run by the sun. This mission requires passion, determination and a diverse growing army of talented professionals. Explore joining our mission by connecting with [ Link removed ] - or by submitting an application to this job today. Overview We're looking for a creative and data-driven account manager to join our growing team. We believe in building a company filled with creative, data-driven, autonomous, hard-working, and empowered individuals who strive to win in everything they do, while simultaneously helping to tackle the worlds energy situation in an economically attractive way. The Client Account Manager is tasked with generating maximum revenue over time by strategically handling clients purchasing leads through the Clean Energy Experts (CEE) marketplace. This includes client prospecting, onboarding, customer service, growth, retention and collections. The CEE marketplace is a dynamic auction platform selling hundreds of thousands of leads per year. A successful candidate will be with an appetite to build a client base through cold call prospecting.[7]

---

[6] https://www.wayup.com/i-j-Sunrun-033083195507365/

[7] https://www.internships.com/posting/bug_38834392597

**Sr. Multi Family Homes Account Manager**
Sunrun ★★★☆☆ 443 reviews
New York, NY 10033
Apply Now

Responsibilities:

- Adopt, manage and grow the relationships with Sunrun's valued existing multifamily partners. Secure a high level of portfolio share for Sunrun with these developers. Ensure that our customers receive the best possible service and execution as it pertains to their solar and solar+storage requirements.
- Hunt, identify and intensely pursue new multifamily customers. Cold-call/reach out, create interest in Sunrun's solar program and secure sales meetings. Understand and address the developers' solar and solar+storage requirements. Present the Sunrun Affordable Multifamily Program, products and solutions with the primary purpose of gathering new business and signing new portfolio properties. [8]

30. There are numerous complaints posted online from consumers who received multiple unsolicited calls from Solar America, including allegations of calls that were pre-recorded:

- "Called 3 times in 3 days to offer solar panels. Unsolicited call - never did business with them and it is a robocall."[9]
- "Have 3 calls in 3 days. Finally called the number back just to check. Solar America. They want to set up solar on your home, whether you're interested or not. They are breaking the law with the robocalls and non-solicited calls."[10]
- "They call my cell phone 6-8 times a day. I have requested mulitiple times to be placed on the do not call list and they refuse to do so."[11]
- "Calls 3-4 times a day from Winchester MA"[12]
- "Autodialer – masking caller-ID sometimes shows Winchester, sometimes out of area. Multiple calls a day – no message."[13]

---

[8] https://www.indeed.com/jobs?q=Residential%20Solar%20Sales&rbc=Sunrun&jcid=e3618b0356bf9a8f&vjk=3720d2d3960d5ad6
[9] https://www.shouldianswer.com/phone-number/7738197979
[10] https://800notes.com/Phone.aspx/1-773-819-7979
[11] https://www.bbb.org/us/ca/la-jolla/profile/marketing-consultant/solar-america-1126-172011194/complaints
[12] https://findwhocallsyou.com/7812187369?CallerInfo
[13] *Id.*

- "Christine has called every day. Leaving this number saying we called for solar energy info. Which I don't recall doing. Will not stop calling"[14]

31. In addition, consumers have posted pre-recorded voicemail messages they received from Solar America including:



[15]

32. Neither the Plaintiff nor the members of the proposed classes ever provided Defendants and/or their agents with prior express written consent to receive the telephone calls at issue.

33. Defendants do not have any record of express written consent to place telemarketing calls, or calls featuring an artificial or prerecorded voice, to Plaintiff or to members of the proposed classes.

## PLAINTIFF ARCIERI'S ALLEGATIONS

34. Plaintiff Arcieri registered her landline residential phone number on the DNC on August 16, 2003.

35. Plaintiff Arcieri uses her landline number for personal use only. It is not used as a business number.

[14] https://findwhocallsyou.com/8006808554?CallerInfo
[15] https://directory.youmail.com/directory/phone/5413032484

36. On November 25, 2020 at 5:36 PM, Plaintiff Arcieri received a call on her residential landline phone from the phone number 781-218-7369.

37. The Plaintiff did not answer this call and a pre-recorded voicemail was left on the Plaintiff's residential phone. In the voice message, the agent identified herself as Christine from Solar America. The agent shared 800-680-8554 as their call back number.

38. 800-680-8554 is the contact phone number provided in the privacy policy page on SolarAmerica's official website.[16]

39. Plaintiff received additional calls from Defendant Solar America using phone number 781-218-7369 on:

- November 25, 2020 at 6:37 PM
- November 30, 2020 at 4:39 PM, 6:37 PM and 7:47 PM
- December 1, 2020 at 1:58 PM and 2:55 PM
- December 2, 2020 at 9:00 AM.

40. A little later in the morning of December 2, 2020, Plaintiff received another call from Defendant Solar America using phone number 781-218-7369.

41. This call was not answered, but the exact same pre-recorded voicemail that Plaintiff received on November 25, 2020 was left again asking Plaintiff to call 800-680-8554.

42. Plaintiff then received additional calls from Defendant Solar America using phone number 781-218-7369 on:

- December 2, 2020 at 12:00 PM, 3:00 PM and 6:00 PM, approximately.
- December 3, 2020 at 8:58 AM, 12:00 PM, 3:00 PM and 6:00 PM, approximately.
- December 4, 2020 at 11:52 AM.

43. Plaintiff did not answer any calls from Defendant Solar America. Plaintiff continued to get harassed by the constant unwanted calls she received. Plaintiff received over 15 unsolicited calls despite having never looked into getting solar installed in her home.

[16] https://www.solaramerica.com/privacy-policy/

44. At no time did Plaintiff provide prior express written consent to receive pre-recorded or other telemarketing calls from either Defendant.

45. The unauthorized telephone calls that Plaintiff received from Solar America on behalf of Sunrun, as alleged herein, have harmed Plaintiff Arcieri in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

46. Defendant Solar America was and is aware that the above-described telephone calls were being made either by it directly, or made on its behalf, and that the telephone calls were being made to consumers who had not provided prior express written consent to receive them.

47. Defendant Sunrun was and is aware that the above-described telephone calls were being made on its behalf, and that the telephone calls were being made to consumers who had not provided prior express written consent to receive them.

## CLASS ACTION ALLEGATIONS

48. Plaintiff Arcieri brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded Class:** All persons in the United States who, from four years prior to the filing of this action through trial, received a telephone call made by or on behalf of Defendants: (1) promoting Sunrun's products or services (2) using an artificial or pre-recorded voice; and (3) for which Defendants and their agents lacked any current record of prior express written consent to place the call at the time the call was made.
>
> **Do Not Call Class**: All persons in the United States who, from four years prior to the filing of this action through trial, received more than one telephone call made by or on behalf of Defendants within a 12-month period (1) promoting Sunrun's products or services (2) at a telephone number that had been listed on the National Do Not Call Registry for at least thirty days at the time of each call (3) where such individual had not entered into any purchase or transaction with Defendants within the 18 months preceding such calls; and (4) for which Defendants and their agents lacked any current record of prior express written consent to place the call at the time the call was made.

The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's counsel and their experts and consultants; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released, including as a result of any prior class action settlement. Plaintiff Arcieri anticipates the need to amend the Class definitions following appropriate discovery.

**Rule 23(a)**

49. **Numerosity and Ascertainability**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is likely that Defendants made telephone calls to thousands of consumers who fall into each of the Classes, such that individual joinder of all members is impracticable. Members of the Classes can be identified through Defendant's records.

50. **Commonality:** There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include the following:

**Prerecorded class**

(a) whether Defendants' conduct violated the TCPA;

(b) whether Defendants placed, or caused to be placed on their behalf, telephone calls using an artificial or prerecorded voice to Plaintiff and members of the Pre-recorded Class;

(c) whether Defendants and/or their agents had prior express written consent to place such calls

(d) whether Plaintiffs and the members of the Pre-recorded Class are entitled to treble damages based on the willfulness of Defendants' conduct.

**Do not call class**

(a) whether Defendants' conduct violated the TCPA;

(b) whether Defendants placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the National Do Not Call Registry for at least 30 days at the time of each call;

(d) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

51. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful telemarketing conduct toward Plaintiff and each of the Classes. As a result of this uniform misconduct, Plaintiff and the other members of the Classes suffered the same injuries (in the form of the violations of their statutory rights under the TCPA) and are entitled to identical calculations of statutory damages (per call).

52. **Adequacy**: Plaintiff Arcieri will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Arcieri has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff Arcieri and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Arcieri nor her counsel have any interest adverse to the Classes.

**Fed. R. Civ. P. 23(b)(2)**

53. Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate.

**Fed. R. Civ. P. 23(b)(3)**

54. **Predominance**: Moreover, questions of law and fact common to the class predominate over any questions affecting only individual members, because the claims of Plaintiff and the other members of the Classes all arise from Defendants' uniform campaign of making unauthorized calls to their telephones. Defendants' liability for all of the calls to all class members hinges on the same law and substantially similar conduct by Defendants, not on law or facts specific to Plaintiff Arcieri or any other individual class member. The main issues to be decided, such as the ones identified above, are common to all class members who received calls as part of Defendants' uniform campaign of making unauthorized calls. Moreover, the answers to such common questions will be based on common proof, primarily from information to be found within Defendant's own records.

55. **Superiority:** class action treatment is superior to all other available methods for the fair and efficient adjudication of this controversy, and because joinder of all parties is impracticable. The damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Arcieri and the Pre-recorded Class)**

56. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

57. Defendants and/or their agents made unwanted solicitation telephone calls to Plaintiff Arcieri and the other members of the Pre-recorded Class in an effort to sell Defendant Sunrun's goods and services.

58. These calls used artificial or pre-recorded voices.

59. These pre-recorded voice calls were made without the prior express written consent of the Plaintiff Arcieri and the other members of the Pre-recorded Class.

60. The Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B). As a result of Defendants' conduct, Plaintiff Arcieri and the other members of the Pre-recorded Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Arcieri and the Do Not Call Class)**

61. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

62. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons

who do not wish to receive telephone solicitations that is maintained by the Federal Government."

63. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

64. 47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows: "The Commission's rules provide that companies making telephone solicitation to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

65. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Arcieri and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

66. As a result of Defendants' conduct as alleged herein, Plaintiff Arcieri and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

67. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Arcieri individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Arcieri as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Arcieri requests a jury trial.

**SANDRA ARCIERI**, individually and on behalf of all others similarly situated,

DATED this 14th day of June, 2021.

By: /s/ *Rachel E. Kaufman*

Rachel Elizabeth Kaufman
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
(305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Classes*